

New Jersey
430 Mountain Avenue
Suite 303
Murray Hill, NJ 07974

(908) 516-1050 Tel
(908) 516-1051 Fax

**Writer's Direct Dial:**
908-516-1071

**Writer's E-mail:**
dlichtenberg@fisherphillips.com

July 19, 2022

***VIA ECF***
Hon. Ronnie Abrams, U.S.D.J.
United States Courthouse
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: **Riassa Muntaz v. Fairygodboss, Inc. et. al.**
      Case No.: 1:21-cv-09386-RA

Dear Judge Abrams:

  This firm represents the Defendants Fairygodboss, Inc. ("FGB"), Romy Newman, Maura Bradley and Danna Hendrickson ("Defendants") in the above captioned matter. This opposition is respectfully submitted in response to Plaintiff's letter motion requesting a pre-motion conference to compel discovery and for the entry of Plaintiff's proposed ESI protocol.

  **I.**  **FACTUAL BACKGROUND**

  Plaintiff was hired by Ms. Hendrickson on October 5, 2020, to work on FGB's Demand Generation Team as a Hunter Sales Development Representative ("SDR"). Contrary to Plaintiff's claims and representations, SDR's have no sales responsibilities or responsibility for generating revenue. They are simply required to make cold calls and to attempt to schedule meetings for FGB's Sales Executives. The performance and quota requirements for an SDR are as follows:

- During the first five (5) weeks (*in Plaintiff's case Monday October 5, 2020 – November 6, 2020*) SDR's have no performance or quota requirements.

- During the next five (5) weeks (*in Plaintiff's case Monday November 9, 2020 – December 18, 2020*) SDR's are required to book a minimum of ten (10) meetings per week.

- After ten weeks SDR's are required to book a minimum of twenty (20) meetings over each four (4) week rolling period.

**Fisher & Phillips LLP**
Atlanta · Baltimore · Bethesda · Boston · Charlotte · Chicago · Cleveland · Columbia · Columbus · Dallas · Denver · Detroit · Fort Lauderdale · Gulfport
Houston · Irvine · Kansas City · Las Vegas · Los Angeles · Louisville · Memphis · Minneapolis · Nashville · New Jersey · New Orleans · New York · Orlando
Philadelphia · Phoenix · Pittsburgh · Portland · Sacramento · San Diego · San Francisco · Seattle · Tampa · Washington, DC · Woodland Hills

- If an SDR fails to meet at least 75% of their quota during any four (4) week rolling period, they are automatically placed on a performance improvement plan ("PIP") and terminated from their employment if they fail to meet the required booking of twenty (20) meetings during the next four (4) week rolling period.

Plaintiff's performance was abysmal. She was the subject of numerous complaints from both her co-workers and superiors throughout her employment. She refused to attend scheduled meetings with her supervisor Ms. Hendrickson. Between June 6, 2021 and July 10, 2021, she failed to even reach 50% of her required quota. And on June 23, 2021, she was caught attempting to divert an account from one of her co-workers and became verbally abusive when confronted.

It was against this backdrop, that Plaintiff was placed on a PIP, which began on July 13, 2021 and expired on August 9, 2021. And it is against this backdrop, that when Plaintiff failed to come anywhere near meeting her required quota that her employment was terminated.

Plaintiff subsequently filed the instant matter for which, Defendants' motion to dismiss is currently pending, discovery has revealed that Plaintiff's Complaint was brought and pursued without any good faith basis in law or fact.

## II. SUMMARY OF DEFENDANTS' POSITION

When stripped of smoke and mirrors, Plaintiff's **entire race discrimination and retaliation claim**[1] is based on Ms. Hendrickson's e-mail in response to Plaintiff's conduct on June 23, 2021, providing in pertinent part: "Your Slack message to Nicole was inappropriate. Again one of our core values is to be constructive, not negative or destructive . . ." [2]

On June 25, 2021, **three (3) weeks into not being on track to meet her minimum performance and quota requirements**, Plaintiff complained that she believed that Ms. Hendrickson's use of the term "destructive" in the above e-mail was a "racist microaggression." In attempting to support her race-based claims, Plaintiff has submitted that her "white counterparts" purportedly received "more favorable treatment" and that this may be reflected in

---

[1] Defendants are at a loss as to Plaintiff's representation to the Court that Plaintiff was placed on a PIP "three weeks after she took disability related medical leave" as this claim has no support in the record of which Defendants are aware.

[2] One of numerous liberties Plaintiff takes with the record is her claim that "it is undisputed that Defendants removed one of Plaintiff's account executives weeks after she complained to HR regarding Henderson." (*Ltr. Mot.*, at p.2.) This claim is not undisputed. It has no basis in reality and cannot be reconciled with Plaintiff's own document production. Independently, the undisputed evidence and the timeline of events make clear that the decision to terminate Plaintiff's employment **was made well in advance of August 9, 2021**, the date upon which Plaintiff's Counsel first advised FGB that they had been retained – a point which Counsel is well aware. Nevertheless, Plaintiff's letter motion incredibly persists in continuing to promote the knowingly false narrative that "Defendants terminated Plaintiff days after learning that she hired an attorney in connection with her discrimination claims." (*Id.* at p. 1.)

the manner in which leads, accounts and assignments were distributed. The undisputed timeline of events, however, makes clear:

- At the time Plaintiff was hired, the Demand Generation Team **had no "white comparators"** and consisted entirely of: (a) Plaintiff; (b) two other Black employees; and (c) one Hispanic employee.

- The first "white comparator" Plaintiff claims allegedly received more favorable treatment from Ms. Hendrickson, did not begin working for FGB until November 22, 2020, and did not begin being held to the same performance and quota requirements (**outlined above**) as Plaintiff until February 1, 2021; and

- The second "white comparator" Plaintiff claims received more favorable treatment from Ms. Hendrickson, did not begin working for FGB until April 12, 2021, and did not begin being held to the same performance and quota requirements (**outlined above**) as Plaintiff until June 28, 2021.

Thus, the distribution of leads, accounts and assignment prior to February 1, 2021, **when the individuals held to the same standards as Plaintiff consisted of: (a) two other Black employees; and (b) one Hispanic employee**, would not be relevant, admissible or calculated to lead to the discovery of admissible evidence as to any claim or defense at issue. Nevertheless, Plaintiff has been provided with every existing document in FGB's possession reflecting leads, meetings, assignments and opportunity data from salesforce.com for every member of Ms. Hendrickson's team including the "white comparators" Plaintiff identified.

To require Defendants to track down, *inter alia,* each individual account, how those individual accounts were assigned, to whom they were assigned, and the possible reason why the assignment was made, by going through thousands of Slack communications would require an enormous expenditure of time and resources for incomplete data in the context of a case, where: (a) Plaintiff never complained and has no basis for claiming that leads, assignments and accounts were "discriminatorily" assigned; (b) Plaintiff made her quota during every four week period that she was employed until June 2021 at which point she was placed on a PIP; (c) Plaintiff has not claimed, and has no good faith basis to claim that her failure to meet her required quota between June 6, 2021 and July 10, 2021, resulted from leads, assignments and accounts being "discriminatorily" assigned; (d) four other employees (**three of whom were white**) were placed on a PIP and terminated from their employment during the same time period; (e) the only other employee who successfully passed a PIP and therefore retained their employment during the relevant time period was Black; and (f) Plaintiff's potential damages even if she could survive a motion to dismiss and summary judgment (if necessary) are extremely limited.[3]

---

[3] As a result of FGB's financial status, Plaintiff's employment would have been terminated in any event by February 2022. Should the Court deem it appropriate we can provide additional information with respect to these developments

With respect to ESI discovery, at no point did Defendants' Counsel represent that Plaintiff's proposed ESI protocol was acceptable or even remotely reasonable. What Plaintiff proposed was far more extensive than the completely overbroad ESI discovery requests Plaintiff initially propounded. Plaintiff has been provided with every communication **in which her name was referenced in any context** between and among: (i) Ms. Hendrickson; (ii) Ms. Bradley; (iii) Ms. Newman; (iv) FGB People and Cultural Director Dan Sprock; and (v) FGB CEO Georgene Huang; **the specific custodians Plaintiff identified in her ESI protocol spanning the entire duration of her employment with FGB.** As Plaintiff is aware, neither FGB, nor any of its current and/or former employees, has ever been accused of any form of illegal, unlawful, discriminatory or retaliatory conduct. The remaining disputes regarding ESI all stem from Plaintiff's request for "white comparator information" which for the reasons set forth above are wholly overbroad and unduly burdensome, neither relevant nor calculated to lead to the discovery of admissible evidence in whole or part and in any event not proportional to the needs of a case (with extremely limited damages) when compared to any minimal benefit which Plaintiff may claim.

For these reasons, Plaintiff's motion should be denied in its entirety,

We thank Your Honor for consideration of the foregoing. Should Your Honor or anyone from Chambers have any questions or require further information, please do not hesitate to contact me.

    Respectfully submitted
    FISHER & PHILLIPS LLP

    *s/David Lichtenberg*
    _____
    David Lichtenberg

cc:    Travis Pierre-Louis, Esq.